**NOT FOR PUBLICATION**                               **CASE CLOSED**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

FRANK HUBBARD,

        Plaintiff,                      Civil Action No. 04-3412(SDW)

    v.

CORRECTIONAL MEDICAL
SERVICES, INC., ET AL.,

                                     **OPINION**

        Defendants.

                                       July 30, 2008

**WIGENTON, District Judge**

      This matter comes before the Court on a Motion for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56(c), filed by Defendants Correctional Medical Services, *et al.*[1]

      The Motion for Summary Judgment is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, the Motion for Summary Judgment is granted.

**I. Jurisdiction/Venue**

      The Court has original jurisdiction over the 42 U.S.C. § 1983 Claim (Count I) pursuant to 28 U.S.C. § 1331 and exercises supplemental jurisdiction over the Corporate/Medical Negligence and Medical Negligence Claims (Counts II and III, respectively) pursuant to 28 U.S.C. § 1367(a). Venue is proper in this District under 28 U.S.C. § 1391(b)(2).

**II. Procedural History**

      A purported class action lawsuit, *Bennett v. Correctional Medical Services, Inc.*, No. 02-4993, 2008 U.S. Dist. LEXIS 39020 (D.N.J. May 14, 2008), was filed on behalf of New Jersey State

---

[1] This Motion corresponds to docket entry #35.

prisoners on October 16, 2002 alleging, *inter alia*, similar claims as alleged by Plaintiff Frank Hubbard ("Plaintiff") in this lawsuit against Correctional Medical Services, *et al.* ("Defendants"), which was filed on July 20, 2004. In May of 2006, the purported class Plaintiffs in *Bennett* filed a motion for class certification. By May 14, 2008 Order, the motion for class certification was denied.

### III. Factual Background

Plaintiff was incarcerated at Rahway State Prison when he was involved in a bloody fight with another prisoner in January of 1999. (Def's Statement of Material Undisputed Facts ¶ 7; Pl's Counter-Statement of Material Facts ¶ 7.) On March 28, 1999, Plaintiff requested to be tested for Hepatitis C believing that he was exposed to the disease during the fight. (Def's Statement of Material Undisputed Facts ¶ 8; Pl's Counter-Statement of Material Facts ¶ 8; Br. in Support of Motion for S.J., Ex. C.) The results of Plaintiff's blood work from April 1, 1999 indicated that Plaintiff was infected with Hepatitis C. (Def's Statement of Material Undisputed Facts ¶ 9; Pl's Counter-Statement of Material Facts ¶ 9, Br. in Support of Motion for S.J., Ex. D.) Plaintiff was informed in 1999 that he was infected with Hepatitis C. (Def's Statement of Material Undisputed Facts ¶ 10; Pl's Counter-Statement of Material Facts ¶ 10.) Plaintiff was informed by Dr. Parks or some other person in 1999 that he did not have AIDS, there was no treatment for Hepatitis C, and his condition was not that serious because Hepatitis C takes 25 years to develop. (Def's Statement of Material Undisputed Facts ¶¶ 18, 19; Pl's Counter-Statement of Material Facts ¶¶ 18, 19.)

On July 30, 1999, Plaintiff requested medical treatment for Hepatitis C. (Def's Statement of Material Undisputed Facts ¶ 12; Pl's Counter-Statement of Material Facts ¶ 12; Br. in Support of Motion for S.J., Ex. E.) On July 30, 1999, Plaintiff told Dr. Parks that there was a cure for Hepatitis C and that he wanted it. (Br. in Support of Motion for S.J., Ex. E.) Medical Progress Notes, dated

December 3, 1999, indicate that Plaintiff sought a follow-up on his Hepatitis C condition. (Br. in Opps'n to Motion for S.J., Ex. G.) By April 21, 2000 letter, Plaintiff wrote to Dr. Hutchison, Director of Medical Services, Health Services Unit of the New Jersey State Department of Corrections, requesting medical treatment for Hepatitis C. (Def's Statement of Material Undisputed Facts ¶ 14; Pl's Counter-Statement of Material Facts ¶ 14; Br. in Support of Motion for S.J., Ex. F.) Within said letter, Plaintiff states that he had written to Dr. Hutchison on two previous occasions regarding treatment for Hepatitis C and that his requests to see Dr. Starrett had been ignored. (Br. in Support of Motion for S.J., Ex. F.) Specifically, Plaintiff states, "I have been denied treatment, [t]he opportunity to see a specialist and the opportunity to see Dr. Starrett. I contracted hepatitis C in January of 1999 and have been trying to get treatment and see a specialist every [sic] since." (Br. in Support of Motion for S.J., Ex. F.) By May 1, 2000 letter, Dr. Hutchison responded to Plaintiff's April 21, 2000 letter and indicated that Plaintiff should address his health care status with Dr. Achebe and, if his questions were not answered during his meeting with Dr. Achebe, then Plaintiff may ask to meet with a gastroenterologist or hepatologist for further review. (Br. in Opps'n to Motion for S.J., Ex. B.)

On May 7, 2000, Plaintiff filed a Health Services Request Form requesting to meet with Dr. Achebe. (Br. in Opps'n to Motion for S.J., Ex. A, CMS-HUB-00626.) On May 24, 2000, Plaintiff filed a Health Services Request Form requesting to meet with Dr. Achebe. (Br. in Opps'n to Motion for S.J., Ex. A, CMS-HUB-00627.) On June 14, 2000, Plaintiff filed another Health Services Request Form requesting to meet with Dr. Achebe. (Br. in Opps'n to Motion for S.J., Ex. A, CMS-HUB-00628.)

On June 29, 2000, Plaintiff had a follow-up physical examination. (Br. in Opps'n for S.J.,

3

Ex. C.)  On July 31, 2000, Plaintiff filed a Health Services Request Form requesting ostensibly that lab work be done on him.  (Br. in Opps'n to Motion for S.J., Ex. A, CMS-HUB-00636.)  On October 11, 2000, Plaintiff had lab work done.  (Br. in Opps'n to Motion for S.J., Ex. D.)  On November 16, 2000, Plaintiff filed a Health Services Request Form requesting to meet with Dr. Achebe and met with a nurse, who referred Plaintiff to Dr. Achebe.  (Br. in Opps'n to Motion for S.J., Ex. E.)  On November 27, 2000, Plaintiff had a consultation with Dr. Achebe.  (Br. in Opps'n to Motion for S.J., Ex. F.)  On December 4, 2000,  Plaintiff filed a Health Services Request Form requesting to meet with Dr. Achebe.  (Br. in Opps'n to Motion for S.J., Ex. A, CMS-HUB-00640.)

On July 16, 2002, Dr. Achebe indicated in a Chart Document "Phase one Hepatitis C notification and patient education completed.  The patient now has some understanding of the pathophysiology and pathogenesis of the disease.  Treatment options medication and possible side effects were discussed.  The patient wants to be included in future in the treatment program if he meets the criteria."  (Br. in Opps'n to Motion for S.J., Ex. H.)  Dr. Achebe also indicated that Plaintiff should return for a follow-up in three months.  (Br. in Opps'n to Motion for S.J., Ex. H.)  On August 20, 2002, Plaintiff filed a Health Services Request Form stating, "Dr. Achebe came to see me the third week of July and told me he would call me down, run tests and we would talk about a possible treatment (for [H]epatitis C).  That was a month ago.  I have heard nothing."  (Br. in Opps'n to Motion for S.J., Ex. A, CMS-HUB-00646) (alteration in original).  On September 16, 2002, Plaintiff filed a Health Services Request Form stating, "I have been waiting to be scheduled for tests since July (hepatitis C).  Ordered by Dr. Achebe."  (Br. in Opps'n to Motion for S.J., Ex. A, CMS-HUB-00647.)  On September 26, 2002, Plaintiff filed a Health Services Request Form stating, "I again request to be called down to see Dr. Achebe.  He said he would call me down for

4

tests (hepatitis C).  That was in July." (Br. in Opps'n to Motion for S.J., Ex. A, CMS-HUB-00648.) On September 30, 2002, Plaintiff filed a Health Services Request Form stating, "I again request to see Dr. Achebe in reference to tests (for hepatitis C), and consultation." (Br. in Opps'n to Motion for S.J., Ex. A, CMS-HUB-00649.)  On December 30, 2002, Plaintiff filed a Health Services Request Form stating, "I request to see Dr. Achebe for result of blood tests and further testing, concerning hepatitis C." (Br. in Opps'n to Motion for S.J., Ex. A, CMS-HUB-00650.)  On February 12, 2003, Plaintiff had a liver biopsy procedure to determine the status of his Hepatitis C.  (Br. in Opps'n to Motion for S.J., Ex. A, CMS-HUB-00653.)

An August 28, 2003 Chart Note indicates that Plaintiff completed the final phase of Hepatitis C treatment screening and was started on Peg-interferon and Rebetol.  (Br. in Opps'n to Motion for S.J., Ex. I.)  On September 17, 2003, Plaintiff missed an interferon injection.  (Br. in Opps'n to Motion for S.J., Ex. J.)  On September 18, 2003, Plaintiff was given an interferon injection.  (Br. in Opps'n to Motion for S.J., Ex. J.)  On November 20, 2003, Plaintiff did not show for a "PEG-INTRON" injection.  (Br. in Opps'n to Motion for S.J., Ex. K.)  A February 14, 2004 Chart Note indicates "peg - intron no re- newed order." (Br. in Opps'n to Motion for S.J., Ex. L.)  On February 25, 2004, Dr. Talbot met with Plaintiff for a follow-up on his Hepatitis C.  (Br. in Opps'n to Motion for S.J., Ex. M.)

Plaintiff stated in his deposition that, around 2003,[2] he "got most of [his] knowledge [about Hepatitis C] on [his] own. . . . Through writing.  [His] sister went on the Internet.  [He] wrote the Liver Foundation[3]."  Plaintiff also stated in his deposition that his mother told him around 2004 that

---

[2] (Br. in Opps'n to Motion for S.J., Ex. A, 21:12-16.)

[3] (Br. in Opps'n to Motion for S.J., Ex. A, 30:11-17.)

he should have been getting drug therapy in 1999. (Br. in Opps'n to Motion for S.J., Ex. A, 48:18-25; 50:12-24.)  Plaintiff explained that his uncle, a security guard at a hospital, talked to doctors and then told Plaintiff's mother the earlier the treatment, the more chance of success.  (Br. in Opps'n to Motion for S.J., Ex. A, 50:12-24.)

### IV. **Summary Judgment**

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant and it is material if, under the substantive law, it would affect the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 318 (1986).

Once the moving party meets the initial burden, the burden then shifts to the non-movant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings.  *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001).  The need of the non-movant to conduct further discovery does not preclude summary judgment unless the non-movant demonstrates how the additional discovery would preclude summary judgment. *Dowling v. City of Philadelphia*, 855 F.2d 136, 139-40 (3d Cir. 1988).  The court may not weigh the evidence and determine the truth of the matter but rather determine whether there is a genuine issue as to a material fact.  *Anderson*, 477 U.S. at 249.  In doing so, the court must construe the facts and

inferences in the light most favorable to the non-moving party. *Masson v. New Yorker Magazine*, 501 U.S. 496, 520 (1991).

## V.  42 U.S.C. § 1983 Statute of Limitations

Federal courts look to state law to determine the statute of limitations period for § 1983 claims. *Wallace v. Kato*, 127 S. Ct. 1091, 1094 (2007) (citing *Owens v. Okure*, 488 U.S. 235, 249-50 (1989)). Section 1983 claims are best characterized as personal injury claims and are governed by the applicable state's statute of limitations for personal injury claims. *Wallace*, 127 S. Ct. at 1094 (internal citations omitted). Under New Jersey Statute 2A:14-2, New Jersey provides for a two year statute of limitations for personal injury torts. N.J. Stat. Ann. § 2A:14-2 (West 2004).

The accrual date of a § 1983 claim is a question of federal law, which provides that accrual occurs "when the plaintiff has 'a complete and present cause of action, . . . that is when 'the plaintiff can file suit and obtain relief.'" *Wallace*, 127 S. Ct. at 1095 (quoting *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997)). Stated differently, the statute of limitations for § 1983 claims begins to run "when the wrongful act or omission results in damages . . . even though the full extent of the injury is not then known or predictable." *Wallace*, 127 S. Ct. at 1097 (quoting 1 C. Corman, Limitation of Actions § 7.4.1. 526-527 (1991) (footnotes omitted)). The U.S. Court of Appeals for the Third Circuit has held that a "claim accrues in a federal cause of action as soon as a potential claimant either is aware, or should be aware, of the existence of and source of an injury . . . not upon awareness that this injury constitutes a legal wrong." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1386 (3d Cir. 1994) (citing *Keystone Ins. Co. v. Houghton*, 863 F.2d 1125, 1127 (3d Cir. 1988)).

7

## VI. Negligence Statute of Limitations

Under New Jersey law, a lawsuit for an injury to a person caused by a wrongful act, neglect or default must be commenced within two years of the accrual of the claim. N.J. Stat. Ann. § 2A:14-2.

## VII. Tolling

The Court must apply the state's tolling rules whenever the state's statute of limitations is borrowed for a federal claim. *Weis-Buy Servs. v. Paglia*, 411 F.3d 415, 422 (3d Cir.2005) (citing *Hardin v. Straub*, 490 U.S. 536, 539 (1989); *Lake v. Arnold*, 232 F.3d 360, 368 (3d Cir. 2000)). Because we are borrowing New Jersey's statute of limitations for Plaintiff's § 1983 claim, we apply New Jersey's rules to decide whether Plaintiff is entitled to the equitable tolling of his § 1983 claim. It is axiomatic that we apply New Jersey's equitable tolling rules to Plaintiff's state law claims of negligence.

### A. Discovery Rule Tolling

The discovery rule tolls the accrual of a claim until "the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim." *Lopez v. Swyer*, 62 N.J. 267, 272 (1973).

> For the statute of limitations to run, the injured party need not know the state of the law positing a right of recovery upon the facts. Instead, the statute of limitations runs when the injured party possesses actual or constructive knowledge of that state of facts which may equate in law with a cause of action. The basis of such a cause of action, is, of course, constituted solely by the material facts of the case. Thus, the statute of limitations begins to run when the plaintiff is aware, or reasonably should be aware, of facts indicating that she has been injured through the fault of another, not when a lawyer advises her that the facts give rise to a legal cause of action.

*Baird v. American Medical Optics*, 155 N.J. 54, 68 (internal quotations and citations omitted). "[K]nowledge of any cognizable injury is sufficient to initiate the running of the limitations period, including injuries that are actually, or apparently, insubstantial or transient." *Abboud v. Viscomi*, 111 N.J. 56, 64 (N.J. 1988). Consequently, "relief from a limitations bar will not normally 'be available to a plaintiff who merely misjudges the severity of an [sic] known injury or who suffers consequent symptoms or ailments reasonably related to the originally known causally-connected injury.'" *Abboud*, 111 N.J. at 64-65 (quoting *Mancuso v. Mancuso*, 209 N.J. Super. 51, 59 (App. Div. 1986)). "We impute discovery if the plaintiff is aware of facts that would alert a reasonable person to the possibility of an actionable claim; medical or legal certainty is not required." *Lapka v. Porter Hayden Co., f/k/a H.W. Porter Co.*, 162 N.J. 545, 555-56 (N.J. 2000). Rather, "some reasonable medical support" for an injury is sufficient. *Lapka,* 162 N.J. at 557 (citing *Vispisiano v. Ashland Chem. Co.*, 107 N.J. 416, 437 (1987)). The discovery rule mandates an objective standard and focuses on whether plaintiff knew or should have known of sufficient facts to start the running of the statute of limitations. *Caravaggio v. D'Agostino*, 166 N.J. 237, 246 (2001). The party claiming entitlement to tolling under the discovery rule bears the burden of proof that he is entitled to its application. *Lopez*, 62 N.J. at 276.

      The court, not the jury, determines whether a plaintiff is entitled to the tolling of the statute of limitations by the discovery rule. *Lopez*, 62 N.J. at 272, 275. To reach its decision, the court must consider the facts and circumstances of the case, including "the nature of the alleged injury, the availability of witnesses and written evidence, the length of time that has elapsed since the alleged wrongdoing, whether the delay has been to any extent deliberate or intentional, whether the delay may be said to have peculiarly or unusually prejudiced the defendant." *Lopez*, 62 N.J. at 276.

In this case, the discovery rule does not save Plaintiff's claims from the statute of limitations bar. In 1999, Plaintiff was informed that he tested positive for Hepatitis C and that there was no treatment for Hepatitis C. On July 30, 1999, Plaintiff requested treatment for Hepatitis C, and on December 3, 1999, Plaintiff sought a follow-up on his Hepatitis C condition. By April 21, 2000 letter, Plaintiff complained to Dr. Hutchison that he had been denied treatment and the opportunity to see a specialist for Hepatitis C ever since January of 1999. He also stated that he had written to Dr. Hutchison about his Hepatitis C condition on two previous occasions and that his requests to see Dr. Starrett had been ignored. Thus—no later than April 21, 2000—Plaintiff knew that Defendants deprived him of treatment for Hepatitis C.

Armed with the knowledge on April 21, 2000 that Defendants deprived him of treatment, Plaintiff should have known that such deprivation caused him an injury.[4] Had Plaintiff exercised reasonable diligence and intelligence, he should have discovered no later than April 21, 2000 that Defendants' deprivation of treatment for his Hepatitis C caused him to suffer the irreversible progression of Hepatitis C.[5] A person exercising reasonable diligence and intelligence would have researched his condition and treatment options when diagnosed with Hepatitis C and, thus, would have discovered that no treatment, or a delay in treatment, would result in the irreversible progression of Hepatitis C. If Plaintiff exercised reasonable diligence and intelligence, he would

---

[4] The Court has not made any finding as to the merits of Plaintiff's claims that Defendants' deprivation of appropriate testing, monitoring and treatment for his Hepatitis C caused him to suffer irreversible progression of the Hepatitis C disease. The Court has accepted Plaintiff's claims solely to resolve the statute of limitations issue, which does not require a decision on the merits of Plaintiff's claims.

[5] For ease of reference, the Court refers to the irreversible progression of Hepatitis C related disease as the irreversible progression of Hepatitis C.

have, by April 21, 2000, written to the Liver Foundation or asked his family members to research the disease; after all, he was diagnosed in 1999. In fact, Plaintiff testified that he acquired most of his knowledge about Hepatitis C in 2003-2004 by having his sister do research on the Internet, by writing to the Liver Foundation, and by receiving information from his mother. Plaintiff is proficient in English and prolific, as evidenced by his April 21, 2000 letter and the numerous Health Services Request Forms he submitted. Plaintiff has not proffered any evidence to suggest that his incarceration even hindered his ability to exercise reasonable diligence in 1999 or 2000 to discover that he had a basis for an actionable claim. By April 21, 2000, Plaintiff could have, and should have, taken steps to get information about treatment for Hepatitis C, and he should have filed suit within the limitations period. Plaintiff was aware of facts that would have alerted a reasonable person to the possibility of an actionable claim, thus we impute discovery by April 21, 2000.

Even if Plaintiff reasonably believed that he was being worked up for treatment from 1999 to December 2000, Plaintiff cannot claim that he exercised reasonable diligence and intelligence from January 2001 to June 2002 because Plaintiff did nothing and nothing was done to him relating to his Hepatitis C. In other words, no treatment was provided to Plaintiff, no blood work was done on Plaintiff, he had no appointments with any medical personnel, he did not file any Health Services Request Forms, nor write any letters to any medical personnel, and he did not visit the medical clinic. Thus, even if Plaintiff reasonably believed that he was being worked up for treatment until December 2000, he could not continue to reasonably believe that he was being worked up for treatment from January 2001 to June 2002. Plaintiff certainly must have known by June 2002 that he had not yet received treatment, and he should have known that he had an actionable claim.

Plaintiff argues to no avail that his reliance on his physicians' representations from March

11

1999 to February 2004 that he was being worked up for treatment prevented him from recognizing until 2004, when his treatment failed, that no treatment or the delay in treatment caused him injury.[6] First, it was unreasonable for Plaintiff to believe—over a period of five years—that he was getting worked up for treatment. Second, it was unreasonable for Plaintiff to believe until 2004 that he was getting worked up for treatment when he received Peg-interferon injections in 2003. Third, the fact that Plaintiff filed a barrage of requests for treatment and/or complaints since July 1999 and told Dr. Parks that he wanted the cure for Hepatitis C indicates that Plaintiff was not relying on his physicians' representations that he was being worked up for treatment.

Further, Plaintiff argues to no avail that he is entitled to relief from the limitations bar because he has a separate claim of negligence for the missed injections of Peg-interferon in 2003.[7] He claims that said missed injections contributed to the irreversible progression of his Hepatitis C. As aforementioned, if Plaintiff exercised reasonable diligence and intelligence, Plaintiff should have been aware by 2000 that the lack of treatment would cause the irreversible progression of his Hepatitis C. Plaintiff's constructive knowledge of this cognizable injury was sufficient to start the running of the statute of limitations on April 21, 2000. Plaintiff's contention that the missed injections of Peg-interferon contributed to that same injury will not save Plaintiff from the limitations bar. Plaintiff is not entitled to relief from the limitations bar because he misjudged the severity of his injury or because he did not appropriately assess his likelihood of treatment failure. Because Plaintiff was aware by April 21, 2000 that he was denied treatment for Hepatitis C, Plaintiff

---

[6] Plaintiff argues that, since 1999, he relied on his physicians' representations that he was being worked up for treatment (Br. in Opps'n to Motion for S.J. at 10), while he vehemently denies that he knew that treatment was available in 1999 (Br. in Opps'n to Motion for S.J. at 11).

[7] Neither Count II nor Count III specify that a negligence claim accrued in 2003.

12

could not have been reasonably unaware of his injury until his treatment failed in February 2004.

Finally, because Plaintiff has not established that he is entitled to equitable tolling under the discovery rule, this Court need not consider whether equitable tolling would prejudice Defendants.

### B. Class Action Tolling

Plaintiff's claims accrued on April 21, 2000, and they were barred by the statute of limitations by April 22, 2002. Thus, they were already barred by the time the *Bennett* class action was filed on October 16, 2002 and, as such, the class action tolling doctrine cannot save Plaintiff's claims.

Further, even assuming that Plaintiff's claims accrued as late as June 2002, the class action tolling doctrine is still inapplicable to Plaintiff's claims. A plaintiff who files an independent lawsuit without waiting for a determination on class certification does not get the benefit of class action tolling. *Wyser-Pratte Management Co., Inc. v. Telxon Corp.,* 413 F.3d 553, 568 (6th Cir. 2005) (a plaintiff who chooses to file an independent action without waiting for a determination on the class certification issue may not rely on the American Pipe tolling doctrine); *Smart-El v. Correctional Medical Services, Inc.*, No. 04-3413, 2008 U.S. Dist. LEXIS 44376, at *8-9 (D.N.J. June 5, 2008) (by filing an individual suit, a plaintiff forfeits his rights under the class action tolling doctrine); *In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 261 F. Supp. 2d 188, 221 (E.D.N.Y. 2003) (avoidance of multiple lawsuits, court congestion, wasted paperwork and expense -- militates against applying the tolling doctrine to a plaintiff who files a lawsuit before class certification is decided); *Rahr v. Grant Thornton LLP*, 142 F. Supp. 2d 793, 800 (N.D. Tex. 2000) ("[n]one of the judicial efficiency purposes of the doctrine is served by applying it to plaintiffs who voluntarily pursue their individual claims even before the court determines whether the class is viable"); *Stutz v. Minn.*

13

*Mining & Mfg. Co.*, 947 F. Supp. 399, 404 (S.D. Ind. 1996) (the "tolling rule cannot be properly read to protect the individual plaintiff who files an independent action after the statute of limitations has expired but before a certification decision has been rendered in a timely class complaint which supposedly includes the plaintiff"). The reasoning for this rule is based:

> in part on the holding in *Crown* that once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied. At that point, class members may choose to file their own suits or to intervene as plaintiffs in the pending action. The purposes of *American Pipe* tolling are not furthered when plaintiffs file independent actions before decision on the issue of class certification, but are when plaintiffs delay until the certification issue has been decided.

*Wyser-Pratte Management Co., Inc.*, 413 F.3d at 568-69 (internal quotations and citations omitted).

The *Bennett* class action does not toll the statute of limitations for Plaintiff's claims because he filed his Complaint approximately four years before the *Bennett* class certification was denied. Plaintiff filed his Complaint on July 20, 2004, and the class certification was denied on May 14, 2008. This Court finds that Plaintiff's filing of his individual lawsuit suggests that Plaintiff intended to opt out of the *Bennett* class action. Because Plaintiff filed an independent lawsuit without waiting for a determination on class certification, he does not get the benefit of class action tolling.

## VIII. Conclusion

For the foregoing reasons, the Motion for Summary Judgment filed by Defendants is granted, and Counts I, II and III are dismissed with prejudice. The Complaint is dismissed, and this case is closed. An Order follows.

**S/Susan D. Wigenton, U.S.D.J.**

cc: Judge Madeline Cox Arleo, U.S.M.J.

14